[Civ. No. 31082. Second Dist., Div. One. May 4, 1967.]

JAMES O. REIMEL, as Director of the Department of Alcoholic Beverage Control, Plaintiff and Appellant, v. THE ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Defendant and Respondent.

Thomas C. Lynch, Attorney General, and Stephen H. Silver, Deputy Attorney General, for Plaintiff and Appellant.

Leo K. Gallant for Defendant and Respondent.

WOOD, P. J.—Reba and Ricky J. Piccirilli applied to the Department of Alcoholic Beverage Control for an off-sale liquor license. The Long Beach Unified School District filed a protest against issuance of the license. After a hearing, the department determined that the proposed operation of the applicants would be within the immediate vicinity of a school, and "the issuance of the license would be contrary to public welfare and morals." A petition for reconsideration was denied by the department, and the Piccirillis appealed to the Alcoholic Beverage Control Appeals Board. The board ruled that "the determination of the department that issuance of this license would be contrary to public welfare and morals is arbitrary and constitutes an abuse of discretion," and the decision of the department (denying the license) was reversed. The department then filed, in the superior court, a petition for writ of mandate compelling respondent board to set aside its decision and directing it to affirm the department's decision. The court found that the decision of the board, that the department's denial of the license was arbitrary and an abuse of discretion, was correct as a matter of law. Petitioner (department) appeals from the judgment dismissing the petition.

Appellant (department) contends that the department did not abuse its discretion in denying the license.

Some of the evidence at the hearing before the department was in substance as follows: Reba and Ricky Piccirilli operate a grocery store at 286 Platt Street in Long Beach. According to the testimony of an investigator for the department (and a scale map which he prepared), the playground of the Jane Addams School, which has grades from kindergarten through grade 6, is 200 feet from the center of the store premises, and the entrance to the school is 426 feet from said center. The school and the store are in a residential area, and there is no other commercial enterprise in the area. The school hours are from 8:30 a.m. to 3:15 p.m., and after-school recreation is provided until 5 p.m., apparently with some playground activity on Saturday. The playgrounds are surrounded by a chain link fence. The school has a cafeteria which is utilized by approximately one-half of the children at lunch time. The

children are permitted to leave the school premises for lunch. The store, which is operated by the Piccirillis without the aid of other employees, sells, among other things, candy, cokes, and gum. About 20 children from the school come into the store each day. The Piccirillis propose to change the operation of the store from a grocery store to a delicatessen-type store which will serve take-out food such as pizzas, sandwiches, spaghetti, and meat balls—none of such food to be eaten on the store premises. The least expensive take-out food would be 35 cents, and the food would be sold from noon to 6 p.m. The hours of operation of the store (sale of groceries) would continue to be from 8 a.m. to 8:30 p.m. In connection with the proposed change in operation of the business, the Piccirillis applied to the department for an off-sale beer and wine license. According to Mr. Piccirilli's testimony, the beer and wine would be stored in the back of the store away from the front counter, and children would be permitted to enter the store and purchase take-out food because they enjoy pizza and meat balls more than "grownups" do. The school district filed a protest against the issuance of the license. The protest was filed after a regular meeting of the Board of Education where the board took action to protest the issuance of the license by reason of the proximity of the store to the school. (The record on appeal does not include a copy of the application or the protest.)

The written decision of the department, under the heading "Findings of Fact," states in part as follows: The store is the only commercial activity in the vicinity, and the surrounding neighborhood is entirely residential in character. The school is approximately 175 feet by airline measurement from the closest point of the (store) building to the nearest point of the school property. The school hours are from 8:30 a.m. to 3:15 p.m. on weekdays, with recreational activity until 5 p.m. The closest entrance to the school playground is approximately 426 feet from the store premises by airline measurement. While the applicants operate a grocery store at the present time, it is their intention to change their operation to a take-out food business which would serve pizza, spaghetti, and sandwiches from noon until closing time. The applicants desire the beer and wine license in order to accommodate the anticipated desires of their customers. Children from the school presently patronize the store for soft drinks and candies. It appears likely that individuals may order food and alcoholic beverage at the proposed premises and consume this

food and beverage in the vehicles in the vicinity of the school. This condition would be less likely to occur if the applicants continue the operation of their grocery store.

Under the heading "Determination of Issues Presented," the department's decision states as follows: "The proposed premises are located within the immediate vicinity of a school. In view of the proposed operation of the applicants, the issuance of the license would be contrary to public welfare and morals." Under the heading "Recommendation," it is stated that the protests are sustained.

On appeal by the Piccirillis to the Alcoholic Beverage Control Appeals Board, the board reversed the department's decision and, in a written opinion, said: "It is the opinion of this board that under the evidence adduced, the determination of the department that issuance of this license would be contrary to public welfare and morals is arbitrary and constitutes an abuse of discretion." The board also said in the opinion that finding No. 2 (school is 175 feet from store) and finding No. 6 (likely that individuals may order food and alcoholic beverage and consume them in vicinity of school) are not supported by substantial evidence.

The superior court, upon the department's petition for a writ of mandamus compelling the board to vacate its decision and to affirm the department's decision, considered the entire record of the proceedings before the department and the board, and found in part as follows: The decision of the board that the department's denial of the license was arbitrary and an abuse of discretion is correct as a matter of law. The board did not abuse its discretion in reversing the department's decision. The issuance of the license would not be contrary to public welfare and morals.

Appellant (department) contends that the department did not abuse its discretion in denying the license.

In its opinion reversing the department's denial of the license, the board stated that findings No. 2 and No. 6 were not supported by the evidence. The board further stated that although the department is vested with broad discretionary power in granting or denying a license, the department's determination that issuance of a license would be contrary to public welfare and morals constitutes an exercise of discretionary power which must be supported by substantial evidence. It is then said that proximity to a school and the fact that a protest has been lodged do not require denial of a license, and that the record "does not contain even minimal

evidence supportive of the department's action." It is then said that "under the evidence adduced, the determination of the department that issuance of this license would be contrary to public welfare and morals is arbitrary and constitutes an abuse of discretion."

Finding No. 2 was that the school is located "a distance of approximately 175 feet by airline and pedestrian measurement from the closest point of the building to the nearest point of the school property." Investigator McCartney testified, while referring to a scale map which he had prepared, that the distance from the *center* of the store premises to the nearest edge of the school playground is 200 feet, airline or pedestrian measurement. (The map was received in evidence, but is not included in the record on appeal.) The department found that the school is located a distance of *approximately* 175 feet by airline and pedestrian measurement from the *closest point* of the store building to the nearest point of the school property. There is no evidence as to the width of the store building (although such width may appear on the scale map), and, aside from a statement by an official of the school district that the school was about 175 feet from the store, there is no other evidence relating to the distance from the closest point of the store building to the nearest point (playground) of the school property. There is substantial evidence to support finding No. 2.[1]

Finding No. 6 was that it appears likely that individuals may order food and alcoholic beverage at the proposed premises and consume this food and beverage in their vehicles in the vicinity of the school. There was evidence that the proposed operation of the store would be to sell take-out food and alcoholic beverage for consumption outside the premises, and that take-out food would be sold to children. There was no

---

[1]It appears from a paper attached to respondent's brief (but not presented in the administrative or court proceedings) that it is department policy to deny an application for an *off-sale license* if the premises are "within 200 feet" of a school, and that such denial "may be based upon the Investigator's recommendation or upon a valid protest"; but that where the distance is "over 200 feet," the application should be denied only if the investigator and the school officials declare in writing that the licensing would have an adverse effect upon the functioning of the school. The Legislature has specifically authorized the department to refuse issuance of an *on-sale* license for premises located within 600 feet of schools and public playgrounds (Bus. & Prof. Code, § 23789). In *Schaubs' Inc.* v. *Department of Alcoholic Beverage Control,* 153 Cal.App. 2d 858 [315 P.2d 459], the court upheld the denial of an *off-sale* license to a supermarket which was 250 feet from a church, where the church protested issuance of the license.

evidence as to where the food and beverage would be consumed. There was evidence that the store and school are in a residential area, and respondent (board) asserts that the take-out food and beverage would be taken to residential homes and consumed there. Respondent also asserts that the department's finding that purchasers may consume the food and beverage in their vehicles presumes that such purchasers would commit the crimes defined in section 23121 of the Vehicle Code (drinking alcoholic beverage in vehicle) and in section 23122 of said code (possession in vehicle of open receptacle containing alcoholic beverage). Although said finding is improper with reference to the likelihood that alcoholic beverage would be consumed in vehicles, it is not improper to the extent that food and beverage, under the proposed operation of the store, might be consumed in the vicinity of the school (which is 200 feet from the store).

In any event, findings No. 1 through No. 6 are in the nature of evidentiary findings. The ultimate finding upon which the denial was predicated was that issuance of the license would be contrary to public welfare and morals. (See *Bowman* v. *Alcoholic Beverage etc. Board,* 171 Cal.App.2d 467, 468-469 [340 P.2d 652].) As previously stated, the department found that in view of the proposed operation of the store in the vicinity of the school, the issuance of the license would be contrary to public welfare and morals. The appeals board held that under the evidence adduced the department's determination that issuance of the license would be contrary to public welfare and morals was arbitrary and constituted an abuse of discretion; and the court found that said holding by the appeals board was ''correst as a matter of law.''

In *Torres* v. *Department of Alcoholic Beverage Control,* 192 Cal.App.2d 541, 544-546 [13 Cal.Rptr. 531], it is said: ''The Constitution of California confers upon the Department of Alcoholic Beverage Control 'the power, in its discretion, to deny . . . any specific liquor license if it shall determine for good cause that the granting . . . of such license would be contrary to public welfare or morals . . .' (Cal. Const. art. XX, § 22). The discretion thus vested is not absolute, but must be exercised in accordance with law; and the provisions that the department may deny 'a license . . . necessarily implies that its decisions should be based on sufficient evidence and that it should not act arbitrarily in determining what is contrary to public welfare or morals.' . . . In considering the sufficiency of the evidence issue the court is governed by the

substantial evidence rule . . .; any conflict in the evidence is resolved in favor of the decision; and every reasonably deducible inference in support thereof will be indulged. [Citations.] In determining whether the decision of the department is arbitrary, its action is measured by the standard set by reason and reasonable people (*Weiss* v. *State Board of Equalization, supra,* 40 Cal.2d 772, 775-776 [256 P.2d 1]; . . .), bearing in mind that such a standard may permit a difference of opinion upon the same subject (*Bowman* v. *Alcoholic Beverage etc. Board,* 171 Cal.App.2d 467, 471 [340 P.2d 652]); and the court may not substitute a decision contrary to that made by the department, even though such decision is equally or more reasonable, if the determination by the department is one which could have been made by reasonable people. . . . The department and not the court determines whether 'good cause' exists for denying a license upon the ground that its issuance would be contrary to public welfare or morals [citations]; the court determines whether or not the department acted arbitrarily in making its decision; if the decision is without reason under the evidence, the action of the department is arbitrary, constitutes an abuse of discretion, and may be set aside; but where the decision is subject of a choice within reason, the department is vested with the discretion of making the selection which it deems proper, its action is within the scope of a valid exercise of the constitutionally conferred discretion, and the court may not interfere therewith.''

In the present case, where the school district protests issuance of the license, there was evidence before the department to the effect that the store, which is 200 feet from the school and which is presently patronized (for candies and soft drinks) by approximately 20 children a day, proposes to change its operation from selling groceries exclusively to selling take-out food to customers, including children, from noon until 6 p.m.; and in connection with the proposed change in operation, seeks a license (off-sale) to sell beer and wine. There was also evidence that the school (including recreational facilities) is open from 8:15 a.m. to 5 p.m., and the school children are permitted to leave the school premises for lunch. The "proximity of the licensed premises to a school may supply an adequate basis for denial of a license as being inimical to public morals and welfare." (*Weiss* v. *State Board of Equalization,* 40 Cal.2d 772, 775 [256 P.2d 1].) The evidence in the instant case presents a situation where, at

least, there could be a reasonable difference of opinion as to whether the issuance of the license would be inimical to public welfare and morals. ■ "Since the power to determine the facts in licensing matters is vested in the department and not in the board, or the courts, a review of the action of the department is governed by the familiar rule that where there is room for a reasonable difference of opinion with respect to the correctness of a finding of fact, it will not be disturbed by the reviewing tribunal. ■ Neither the board nor the courts may disregard or overturn a finding of fact of the Department of Alcoholic Beverage Control for the reason that it is considered that a contrary finding would have been equally or more reasonable." (*Bowman* v. *Alcoholic Beverage etc. Board, supra*, pp. 471-472.) ■ In the present case, the department did not act arbitrarily, or abuse its discretion, in finding that in view of the proposed operation of the store within the vicinity of the school the issuance of the license would be contrary to public welfare and morals.

The judgment is reversed with instructions to issue a writ of mandate directing the respondent Alcoholic Beverage Control Appeals board to vacate its decision dated March 3, 1966, and to affirm the decision of the petitioner Department of Alcoholic Beverage Control dated August 2, 1965, denying the license.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied June 2, 1967, and respondent's petition for a hearing by the Supreme Court was denied June 28, 1967.